IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED

OCT 30

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

NOV 7  2000

| | |
|---|---|
| JANE DOES 1,2,3,4 and 5 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE TUSCALOOSA COUNTY | ) |
| BOARD OF EDUCATION, et al., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NUMBER

98-C-2644-W

**MEMORANDUM OPINION**

This Court has for its consideration two motions for summary judgment, one

filed by Defendant Timothy Ira Miller and the other filed by the Tuscaloosa County School

Board, the individual school board members, Superintendent Dr. Joyce Sellers, and Principal

Brenda Rickett. Both motions were filed on January 25, 2000. The issues have been fully

briefed and were orally argued at the Court's regularly scheduled motion docket on Friday,

February 18, 2000. Upon due consideration, Timothy Ira Miller's motion will be denied in

its entirety. The other motion will be granted in its entirety.

I. Statement of Undisputed Facts

Plaintiffs are minor female children, who during the 1997-98 school year, were

students at Maxwell Elementary School in Tuscaloosa County. During the 1997-98 school

year, Defendant Timothy Ira Miller (hereinafter "Miller") was employed with the Tuscaloosa County Board of Education (hereinafter "the Board") as a physical education teacher at Maxwell Elementary School.  He was also employed as the girls' basketball coach at Hillcrest Middle School.  Miller first began working at Maxwell Elementary School during the 1995-96 school year.  Miller did not receive tenure status while employed by the Tuscaloosa County School System.

Defendant Brenda Rickett, principal at Maxwell Elementary School, was Miller's direct supervisor at all relevant times.  Dr. Joyce Sellers is the Superintendent of Education for the Tuscaloosa County Schools and held that position during the 1997-98 school year.  Dr. John Hinton is the Superintendent for Personnel and General Services and served in that capacity during the 1997-98 school year.  Dr. Marcia Burke is the Assistant Superintendent for Curriculum Instruction and Staff Development and has served as Title IX Coordinator for the school system since 1994.

On October 13, 1997, Kim Blackmon, a student on the Hillcrest Middle School basketball team, made a formal complaint to the Board that she had been sexually harassed by Miller.  Blackmon claimed that Miller asked her "when are we going to go out," "when are we going to do something," and "when are we going to do it."  She further alleged that "it started" when she was in eighth grade and continued until the eleventh grade.

Hillcrest High School Principal Lee Boozer was responsible for the initial investigation of Blackmon's complaint.  As part of this investigation, he obtained nine written statements from girls who played on the basketball team with Blackmon, under

Miller.   These statements uncovered several other allegations of sexual misconduct, including patting the buttocks of the players, walking into the girls' dressing room and saying "You don't have anything I haven't seen before," telling sex stories, flirting with the players, and taking a female student alone to Miller's house.  Principal Boozer also spoke with and obtained a statement from Miller who denied the allegations.  Principal Boozer concluded that it was "Kim's word against Coach Miller's word," and he forwarded his gathered information and the complaint to the Board's sexual harassment reporting officer, Dr. Hinton, for further investigation at Blackmon's father's request.

Dr. Hinton's own investigation took one day. He interviewed three of the nine students originally questioned by Principal Boozer and one of Blackmon's teacher at Hillcrest.  He also interviewed the student who allegedly went to Miller's home alone with Miller, as well as Miller.  Miller denied all but two allegations.  He admitted to tapping the girls on the buttocks as a form of praise.  He stated that another coach warned him against it and he stopped.  He also admitted taking a female student into his house after he left the concession stand in which he was working with other students to get food.  He stated that he and the student ran by his house to pick up a tape player and then returned to the concession stand.  Dr. Hinton then prepared a report for Dr. Sellers detailing Dr. Hinton's findings.  Based on Dr. Hinton's report, Sellers sent a letter of reprimand to Miller, reprimanding him only for the two admitted allegations.

The incidents that give rise to the present litigation involve alleged sexual harassment and abuse by Miller in his capacity as a physical education teacher at Maxwell

3

Elementary School.  All of the alleged incidents occurred while Miller was administering a state physical fitness test, consisting of a flex-arm hang, mile run, and other such exercises. On Thursday, February 12, 1998, two classes at a time went out to the playground.  Miller personally administered the flex-arm hang to the female students in one class, while the female students in the other class and all of the male students were on the track doing the mile run, monitored by Dana Guy, Miller's assistant.

In order to do the flex-arm hang, the student must pull herself up to a chin-position and hold the position as long as she can.  According to Miller, he had to assist several female students who did not have the upper body strength to perform the exercise. Plaintiffs allege that Miller improperly touched them during this test.  Jane Does 2, 3,4, and 5 allege that Miller reached "up under and between [their] legs" with his hand and that he touched the girls on their "private place between [their] legs." Jane Doe 1 alleges that during the administering of the test, Miller came over to her and started slowly rubbing her on her bottom.  He allegedly continued doing so for approximately thirty to forty-five seconds while she was hanging on the bar.  Jane Doe 1 states that she told Miller that she did not like that he had touched her and that Miller did not respond and acted like he did not hear her.

After the incident, Jane Doe 2 and Jane Doe 5 told their school counselor abut what happened.  The next day, Friday, February 13, 1997, Jane Doe 2 talked to Principal Rickett as well as to her aunt and her mother.  The day after the incident Jane Doe 1 told Principal Rickett about the incident. Jane Doe 1 stated that Rickett responded that she did not think Miller meant anything by the actions.  Later that same day, Jane Doe 1 also spoke

4

with the school counselor and her mother about the incident.  After the incident, Jane Doe 3 and 4, along with several other girls ,went to talk to their teacher about the incident.  Their teacher told them she would speak to Principal Rickett about the matter.  Rickett stated in her deposition that the teacher told her about Jane Doe 3's complaint that day.  Jane Doe 3 also told her mother about the incident the day it occurred.  Jane Doe 3's mother called Rickett that day to tell her of the incident, but according to Rickett, the mother said she did not think Miller meant anything by his conduct.  The next day Jane Doe 4 went alone to talk to the school counselor, where she was told that she should go talk to her mother because it was a personal problem.  Several months later Jane Doe 3 returned to speak with the school counselor about the problem.

Principal Rickett stated in her deposition that she first learned that a complaint had been made against Miller on the day of the incidents, Thursday, February 12, 1998, from Jane Doe 3's teacher and then from Jane Doe 3's mother.  Rickett states that she called Miller on Friday, February 13, 1998, to tell him that a parent had complained that he had touched a girl inappropriately.  Miller claims that she told him not to worry about it, that she felt sorry for him, and that she believed the allegations were false.

On the afternoon of Friday, February 13, 1998, Deputy Sheriff Lloyd Baker appeared at the school and informed Rickett that he was investigating Miller for touching female students.  Rickett then called Superintendent Sellers to inform her of the situation.  According to Sellers, Rickett told her she only knew of one child involved, and in response to Sellers' questioning as to any more complaints, Rickett said "no."  On Monday, February

5

16, 1998, Jane Doe 4's very angry parents visited Rickett about the incident.  Rickett thereafter called Sellers to tell her of the visit.  Sellers told Rickett that she was going to suspend Miller and instructed Rickett to supervise Miller until Dr. Hinton arrived at the school with his suspension letter.

Shortly after lunch, Dr. Hinton arrived at the school and gave Miller the suspension letter.  Miller was suspended with pay.  Miller tendered his resignation to the Board on April 13, 1997.

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, the existence of genuine issue material to the non-movant's case. See *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *see also* Fed.R.Civ.P. 56(e). A dispute of material fact "is 'genuine'...if the evidence is such that a reasonable jury

6

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  If the non-movant's response consists of nothing more than conclusory

allegations, the court must enter summary judgment for the movant.  *See Peppers v. Coates*,

887 F.2d 1493 (11th Cir. 1989).

### III.  Analysis of Claims against the Board, its Members, Superintendent Sellers, and Principal Rickett

#### A.  Title IX Claims

Plaintiffs maintain that the Board of Education is liable under Title IX of the

Education Amendments of 1972, 20 U.S.C. § 1681.  Title IX prohibits sex discrimination

by educational institutions receiving federal financial assistance.  A lawsuit under Title IX

can be brought against the grant-receiving local school district, but not an individual.

*Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274(1998); *Floyd v. Waiters*, 133

F.3d 786 (11th Cir. 1998).

It is undisputed that the Tuscaloosa School System receives federal assistance

within the meaning of Title IX and, thus, is subject to its provisions.

Plaintiffs specifically allege that the Board did not take steps to prevent the

alleged harassment; that the Board failed to inform them of their Title IX rights; and that it

failed to develop reporting procedures for the resolution of complaints.  Plaintiffs further

contend that the abuse and harassment they suffered created an abusive and hostile

educational environment.

To survive the Board of Education's motion for summary judgment, plaintiffs

7

must prove that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination and fails adequately to respond." *Gebser*, 524 U.S. at 290. Moreover, the response must amount to deliberate indifference. *Id*.

Superintendent Sellers was the official within the school system who had authority to address the alleged discrimination and to institute the corrective measures. On its face, it would appear the Board by and through Superintendent Sellers acted expeditiously. Nevertheless, the "appropriate remedial action will necessarily depend on the particular facts of the case - the severity and persistence of the harassment, and the effectiveness of any initial remedial steps. *Rosa H. v. San Elizario Independent School District*, 106 F.3d 648 (5th Cir. 1997).

The alleged incident of sexual abuse occurred on Thursday, February 12, 1998. There are disputes concerning when and by whom Principal Rickett was first informed of the alleged abuse, but it is undisputed that she was at the very least informed by Jane Doe 3's mother on the day of the incidents. Principal Rickett reported the first incident to Sellers on Friday, February 13, 1998, after a law enforcement official came to talk to Rickett. When a second incident was reported to Rickett the following Monday, Rickett then again notified Sellers who promptly suspended Miller with pay. Even if Rickett knew about all five incidents on Friday (which plaintiffs assert), the Board's action through Superintendent Sellers on the following Monday hardly amounts to deliberate indifference. Considering the severity and persistence of the complaints along with the effectiveness of the Board's action,

8

Miller's prompt suspension amounts to an appropriate remedial action.

Plaintiffs also assert that the Board had actual knowledge of Miller's pattern of sexual abuse and harassment by virtue of the October 1977 complaint. In *Gebser*, the Supreme Court addressed the effect of prior complaints in the realm of notice. *See Gebser*, 524 U.S. at 274. The Court affirmed the district court's finding that complaints made by the parents of other students that a teacher was acting inappropriately in one matter did not give the district actual knowledge that the teacher was acting inappropriately in another matter. *Id*. Likewise, in the present case, Dr. Sellers, the official who had the authority to address the alleged discrimination in the prior complaints, made an official decision to remedy the alleged violation by officially reprimanding Miller. Miller admitted to improper conduct, and he was reprimanded. Thus, it cannot be said that the Board had actual and/or constructive knowledge that Miller would sexually abuse plaintiffs in the manner alleged.

Additionally, plaintiffs assert that the Board failed to sufficiently inform the plaintiffs of their rights under Title IX, and its implementing regulations, and further failed to develop, adopt, promulgate, and publish procedures sufficient to allow for the reporting and receiving of complaints of sexual discrimination, as required by Title IX. As defendants correctly point out, the Supreme Court also addressed this claim in *Gebser*. The Department of Education regulations do require fund recipients to "adopt and publish grievance procedures providing for prompt and equitable resolution" of discrimination complaints and to notify students and others "that it does not discriminate on the basis of sex in the educational programs or activities which it operates. *Gebser*, 524 U.S. at 291. However, it

9

is not necessary for the court to address whether the Board complied with these requirements because the Court held that the implied private right of action under Title IX does not allow recovery for violations of those sorts of administrative requirements. *Id.* The Department of Education could enforce the requirements administratively. *Id.*

In conclusion, for summary judgment purposes, the plaintiffs have not met their burden of showing "deliberate indifference" to their complaints by the Board, its members, the superintendent, and the principal. Therefore, on the Title IX claims, these defendants are entitled to summary judgment as to all claims against the Board.

## B.  42 U.S.C. § 1983 Claims

In Count II of their complaint, plaintiffs allege that their rights to safety, security, and privacy guaranteed by the Fourteenth Amendment as enforced by 42 U.S.C. § 1983, have been violated by the Board as well as the Board's  members, Dr. Sellers and Ms. Rickett, in their official capacities.[1]

## I.  Qualified Immunity

---

[1] As an initial consideration,  to obtain relief under Section 1983, plaintiffs must demonstrate that defendants deprived them of a right secured under the United States Constitution or other federal law.  It appears that plaintiffs' claims fall into the category of the right to personal security and to bodily integrity.  Every court of appeals that has had the opportunity to address the issue presented here has logically reasoned that the right to be free from sexual abuse at the hands of a public school teacher is clearly protected by the Due Process Clause of the Fourteenth Amendment. *See Doe v. Claiborne County, Tn.*, 103 F.3d 495, 506 (6th Cir. 1996); *Stoneking v. Bradford Area School District*, 882 F.2d 720, 726 (3rd Cir. 1989), *cert. denied*, 493 U.S. 1044(1990); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994)(en banc), *cert. denied*, 513 U.S. 815(1994); *Abeyta v. Chama Calley Indep. Sch. Dist.*, 77 F.3d 1253 (10th Cir. 1996).  Thus, for summary judgment purposes, we will assume that plaintiffs have met this burden.

From the outset, it must be noted that to the extent that plaintiffs bring § 1983 claims against the individual defendants, qualified immunity is not an issue in this case as plaintiff asserts the § 1983 claims against these individuals in their official capacities. An "official capacity" claim against an individual is actually a claim against the governmental entity for which that individual acts. *Monell v. Department of Social Serv. Of City of New York*, 98 S. Ct. 2018, 2035, n.5 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The real party in interest is the entity itself, and the entity, not the named defendants, will be liable for any damages. *Id.*

Plaintiffs allege that all of the individual defendants are employees or members of the Tuscaloosa County Board of Education, and that with regard to the claims made against them, they acted in their official capacities under color of state law. In addition, the Tuscaloosa County Board of Education is also named as a defendant in this lawsuit. Therefore, any claims bought against the individual defendants in their "official capacities" are actually claims against the Board. The Eleventh Circuit has noted, "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials ." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)(affirming district court's directed verdict in favor of individual city officials sued in their official capacity); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989)(A suit against

11

a government official in his official capacity is a suit against the government agency for whom he is employed.)  Thus, it is clear that the official capacity claims against the individual defendants brought under 42 U.S.C. § 1983 should be dismissed, leaving only the claims against the Board and Miller.

### 2. Entity Liability

Section 1983 provides a mechanism for recovering monetary damages and injunctive relief from governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights, privileges or immunities secured by the United States Constitution or federal statutes.  Section 1983 "is not itself a source of substantive rights, but merely provides a method of vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The Board cannot be held liable for Miller's actions alone, as § 1983 does not allow for recovery under the theory of respondeat superior. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978).  Municipal entities, i.e., the Board, may be found liable under § 1983 only if plaintiffs can show that a "custom" or "policy" of the municipal entity was the "moving force" behind a constitutional deprivation. *Monell*, 436 U.S. at 694.  A policy is a decision officially adopted by the municipality, or created by an official of such rank that he or she could be said to e acting on behalf of the municipality. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)(citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991)).  Likewise, a custom is a practice that is so settled and permanent that it takes on the force of law. *Id*. (citing *Monell*, 436 U.S. at 690-91).  In addition to identifying a policy or custom, a plaintiff

must also demonstrate that the challenged conduct was deliberate and that it was causally linked to the deprivation of federal rights. *Board of County Com'rs, v. Brown*, 520 U.S. 397, 404 (1997).

It is clear, and plaintiffs do not assert otherwise, that a specific action by the defendant Board itself did not violate federal law nor did the Board direct an employee to do so. Instead, plaintiffs' theory is that a facially lawful decision by the Board led to a future violation of federal rights. In other words, plaintiffs attempt to hold the Board liable for its failure to train and supervise Miller, for its failure to act on the prior complaint, and for its failure to adopt a policy preventing sexual harassment and abuse.

In cases where a plaintiff seeks to impose liability based on a facially lawful action which led an employee to violate a plaintiff's rights, the Supreme Court has observed that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Id*. at 405. Further, such a plaintiff must prove deliberate indifference as to the known or obvious consequences on the part of the municipality. *Id*. at 407.

a. Failure to Train, Supervise and Monitor

A municipality can be held liable under § 1983 for failure to train and supervise its employees, but the Supreme Court has limited liability to only those situations "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). It is only in these situations that such a shortcoming can be properly thought as a

13

city "policy or custom" for § 1983 liability.  *Id.*  In applying this standard, the Eleventh

Circuit has stated,

> It is not enough to show that a situation will arise and that taking the wrong
> course in that situation will result in injuries to citizens . . . *City of Canton*
> also requires a likelihood that the failure to train or supervise will result in
> the officer making the wrong decision.  Where the proper response . . . is
> obvious to all without training or supervision, then the failure to train or
> supervise is generally not "so likely" to produce a wrong decision as to
> support an inference of deliberate indifference by city policymakers to the
> need to train or supervise.

*Sewell*, 117 F.3d at 490 (citations omitted).  *Sewell* involved a municipal police officer

who forcibly subjected a female arrestee to a strip search in lieu of a lightened charge.

The Eleventh Circuit held that  deliberate indifference does not exist where the employee

should have known without training or supervision that his conduct was improper.

It is obviously improper for a teacher to sexually abuse students who have been

placed under the teacher's charge.  But, the Board was not "deliberately indifferent" by

its failure to specifically instruct Miller not to sexually abuse children.  On its face,

sexual abuse is so improper that a failure to instruct otherwise does not reach a level of

culpability sufficient to impose liability on the Board.  Therefore, following the Supreme

Court and the Eleventh Circuit's holdings, defendants are entitled to summary judgment

on this claim.

### b.  Failure to Act on Prior Complaint

The court must address the effect of the prior complaint on plaintiffs' claims as the

plaintiffs assert these failure to supervise and train claims under the premise that the

defendants had notice of the need to train and supervise Miller and that the Board's failure to properly act on this complaint led to their deprivation.  In addition to establishing deliberate indifference on the part of the Board, plaintiffs must establish a widespread practice that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with force of law." *Floyd v. Waiters*, 133 F.3d 786 (11th Cir. 1998) (citing *Brow v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).  In other words, "a longstanding and widespread practice," plaintiffs present the formal complaint filed by Ms. Blackmon that surfaced several other allegations.

These allegations cannot be said to amount to a widespread practice, permanent and well settled, as to constitute a custom.  Likewise, it cannot be said that Miller's previous alleged actions were authorized by policymaking officials because once such officials knew about the his prior actions, they investigated his conduct and reprimanded him.  The Board's response falls short of the rigorous standard of culpability established by the Supreme Court.  Thus, plaintiffs attempt to hold defendants liable on the basis of their actual and/or constructive knowledge of past improper misconduct fails.

### c. Failure to Establish, Adopt and Enforce an Adequate Sexual Harassment Policy

As to this final claim, plaintiffs have not presented sufficient evidence to support such an allegation.  Plaintiffs do not argue this point beyond its pure mention in their complaint.

Defendants correctly argue that neither Superintendent Sellers nor Principal Rickett

15

can be held liable for failure to enact policies which they lack power to enact. Here, the power to enact policies is reserved to the Board. *See generally, Ala. Code* § 16-8-1 *et. seq.,* § 16-9-1, *et. seq.* (1975).

In point of fact, the Board did  adopt a sexual harassment policy before the complained incidents occurred. The policy clearly states that "sexual harassment of students of others students or employees is unlawful behavior will not be permitted in the school setting."  Likewise, the policy defines sexual harassment, gives examples of sexual harassment, calls for the designation of a reporting officer, and details the steps for reporting incidents of sexual harassment. Plaintiffs' claims, therefore, fail as to this allegation.

### d. State Law Claims Against Rickett

In Count Three of Plaintiffs' complaint, they allege that Principal Rickett was negligent and wanton in her supervision and monitoring of Miller. Plaintiffs also assert that Rickett acted in bad faith. The court has jurisdiction over these claims based on its supplemental jurisdiction. 28 U.S.C. § 1367. Under Alabama law, as interpreted by the Eleventh Circuit, Rickett is entitled to immunity on these claims.

Individuals who act as state agents are protected by the state's sovereign immunity if the act complained of was committed while that individual was performing a discretionary function. *Does 1, 2, 3, and 4 v. The Covington County School Board*, 969 F. Supp. 1264 (M.D. Ala. 1997) (citing *L.S.B. v. Howard*, 659 So. 2d 43, 44 (Ala. 1995)); *Faulkner v. Patterson*, 650 So. 2d 873, 874 (Ala. 1994). Discretionary functions include:

Those acts as to which there is no hard and fast rule as to course of conduct

16

that one must or must not take those requiring exercise in judgment and choice
and involving what is just and proper under the circumstances.

*Id.* The Alabama Supreme Court, in a recent decision, has specifically listed those activities

that fall within the purview of discretionary functions:

(1) making administrative decisions; (2) allocating resources; (3) negotiating contracts; (4)

hiring, firing, transferring, assigning, or supervising personnel; (5) activities of law

enforcement or correctional officers in arresting, attempting to arrest, or releasing persons;

(6) all other instances where acts or decisions, including those concerning the safety, health,

well-being, fitness, competence, development, or confinement of persons, cannot be

challenged without imposing a burden arising from interference with a co-equal branch of

government that exceeds the benefit of the challenging party's right to a judicial remedy.

*Ex Parte Cranman*, No. CV-96-1014, 2000 WL 772850, *at 12 (Ala. June 16, 2000). This

liability protects individuals against claims of negligence, wantonness, but not against fraud

or bad faith. *Hill*, 495 So. 2d 32, 34-35 (Ala. 1986); *see also Ex Parte Cranman*, WL

772850.

Plaintiffs' specific allegations with respect to the negligence and wantonness claims

relate to Rickett's investigation of Miller, her supervision and monitoring of Miller, and her

response to allegations that gave rise to the present litigation. In a case similar to the one at

hand, the Alabama Supreme Court held that the principal, superintendent, and school board

members were entitled to discretionary immunity against allegations that they knew of the

offending teacher's propensity for abuse, received complaints about the teacher's actions,

17

and failed to take any action to prevent abuse from occurring. *C.B. v. Bobo*, 659 So. 2d 98, 101 (Ala. 1995). In dismissing the state law claim of negligence and wantonness, the court held that whatever action the defendants should have taken was discretionary and that the doctrine of discretionary immunity was applicable. Therefore, because plaintiffs' claims against Rickett are based on her discretionary responsibilities of monitoring and supervising, she is immune and is entitled to summary judgment on these claims.

A mere allegation of bad faith without any supporting evidence is insufficient to overcome the shell of discretionary immunity. *Does 1, 2, 3, and 4,* 969 F. Supp at 1286 (citing *L.S.B.*, 659 So. 2d 43, 44 (Ala. 1995); *Hill v. Allen*, 495 So. 2d 32, 34-34 (Ala. 1986). Here, plaintiffs have failed to produce any evidence from which a reasonable person could conclude that the defendants acted in bad faith.

Thus, defendant Rickett is entitled to summary judgment on plaintiffs' bad faith claim.

### e. Claims Against Miller

Plaintiffs assert three state law claims against defendant Miller: invasion of privacy, assault and battery, and outrageous conduct. The court has jurisdiction over these claims based on supplemental jurisdiction. 28 U.S.C. § 1367. Because disputed material facts surround each of these claims, Miller is not entitled to summary judgment on any of the claims against him.

### Conclusion

Defendants Board, its members, Superintendent Sellers, and Principal Rickett's

18

motion for summary judgment is due to be granted in whole.  Defendant Miller's motion for summary judgment is due to be denied.

Having dismissed the claims that entitled this court to jurisdiction over all the claims against Miller, this Court therefore remands Count IV, Count V, and Count VI of plaintiffs' complaint, which contain all the claims against Miller, to the Circuit Court of Tuscaloosa County.

DONE this 30th day of October 2000.

_____
UNITED STATES DISTRICT JUDGE
U.W. CLEMON